# CHARLESTON

## DAWSON *v.* DAWSON.

### Submitted March 9, 1905.   Decided March 28, 1905.

1. DIVORCE—*Habeas Corpus Proceedings for Child—Res Judicata,*
   *When.*
   The judgment of a circuit court in *habeas corpus* proceedings by
   a wife against her husband for the custody and control of their in-
   fant son, in favor of the wife, after a full hearing, is *res judicata* in
   a suit brought afterwards for divorce and the custody of the child
   by the husband against the wife for desertion and abandonment, as
   to all facts known and existing at the time of the hearing of the
   *habeas corpus* proceedings. (p. 530.)

2. DIVORCE—*Custody of Child—Allegations in Bill—Former Proceed-*
   *ings.*
   In a suit by the husband against the wife, after such judgment,
   for divorce for desertion and abandonment, to entitle the husband
   to have said judgment changed to give him custody of the child his
   bill must allege such facts occurring subsequent to the judgment
   or unknown at the time of its rendition, as, if proven, would war-
   rant the court in view of the welfare of the child, to change such
   custody. (p. 531.)

3. DIVORCE—*Welfare of Children of First Importance.*
   In a suit for divorce, the court in deciding between the father
   and mother of the children, as to their custody and control, will
   regard the welfare and interest of the children as of the first im-
   portance. (p: 533.)

4. DIVORCE—*Custody and Care of Children*
   Where the father and mother have separated and their infant
   children must of necessity be deprived of the care, protection and

training of one of them, then it is the duty of the courts to confide the custody of the infants to that parent, whether father or.mother, best suited to maintain, protect and educate them and bring them up in moral courses,　(p. 534.)

Appeal from Circuit Court, Morgan County.

Bill by Charles S. Dawson against Clara B. Dawson. Decree for plaintiff, and defendant appeals.

*Affirmed in part. Reversed in part.*

FLICK, WESTENHAVER & NOLL and FOREST W. BROWN, for appellant.

FAULKNER, WALKER & WOODS, for appellee.

McWHORTER, JUDGE:

Charles S. Dawson and Clara B. Fearnow were married on the eighth of April, 1896, in Morgan county, and lived together as husband and wife in said county until the 14th day of May, 1898, when the wife left their home and went to the home of her parents, taking with her their only child, at that time, Ray, who was born on the 5th day of December, 1896. On the 20th of October, 1898, another child was born to them, named Agnes. She remained away from home and at her parent's home ever after the time she. left. On the 31st day of July, 1898, Charles S. Dawson went to the home of his wife's parents and took the child and started away with it before his presence was discovered. He was followed some distance by the mother who not being very strong was unable to overtake him and he succeeded in getting away with it. On the first day of August she filed her petition to the judge of the circuit court of Morgan county, praying for a writ of *habeas corpus*, which was granted. In response to the writ the defendant made his return and brought the child into court and on the 17th day of August, 1898, the court having fully heard all the evidence offered on both sides took time to consider and in the meantime placed the child in the custody of the petitioner, Clara B. Dawson, bond having been given for the safe keeping and production of the child in court when the same should be required. At the January term of 1899, the court awarded the care and custody of the child to the petitioner, Clara B. Dawson, until the further order

of the court, and gave judgment in her favor for costs against the defendant, providing that the defendant should have access to the said Ray Dawson at any hour between 9 A. M. and 8 P. M. at any day that he might desire to see him.    To which ruling of the court the defendant took exceptions and was granted leave to prepare bills of exceptions within thirty days from the adjournment of the term.    No appeal or writ of error was ever taken to this judgment.    On the thirtieth day of July, 1901, Charles S. Dawson sued out of the clerk's office of the circuit court of Morgan county, his subpoena in chancery against Clara B. Dawson and at the August rules 1901, filed his bill therein alleging the marriage of the plaintiff and the defendant and the birth of the two children, Ray and Agnes, and alleging that on the 14th of May, 1898, defendant, without just cause or excuse, had wilfully abandoned and deserted him, taking with her their said son Ray, and going to the home of her father in Morgan county, where she had ever since resided; that he was always true and kind to his wife, treating her with consideration and well providing for her comfort and needs; that she left his home during his absence therefrom and refused to return and resume the relations of married life with him, and also refused to give him possession of his said children and mentioned the *habeas corpus* proceeding had two years before wherein the court awarded the son of the parties, Ray Dawson, to the defendant, the mother, subject to the further orders of the said court.    "Plaintiff says that he is clearly entitled to the care and custody of his said child, and that there is now no valid or just reason or cause why he be not restored to the said father's care and custody," and prayed that divorce be decreed him from the bond of matrimony on the ground of willful abandonment and desertion, and that said children, Ray Dawson and Agnes Dawson, be given into his custody, and for general relief.

The defendant appeared and filed an answer in the nature of a crossbill praying affirmative relief.    The answer denied all the allegations of the bill charging her with misconduct and alleging that she was obliged to leave plaintiff because of cruel and inhuman conduct towards her; denied that plaintiff had been true and kind to her and had always treated her with consideration, providing well for her comfort and

needs, and that she willfully abandoned and deserted him and refused to live with her husband without just cause; alleging that the conduct of the plaintiff toward her, both before and since their separation had been cruel and inhuman in the extreme, rendering it impossible for her to live with him, and ruining not only her happiness but also her health; that plaintiff was a man of ungovernable and insane temper and passionate and overbearing disposition; that during the first year of their married life while they lived with respondent's parents they lived in comparative peace and happiness; that after they had moved to the farm of plaintiff's father and were living by themselves difficulties began, the first of which was because of the objection of respondent to the bringing into their home, from the alms house, a half-witted girl of bad reputation, who was not long afterwards delivered of a bastard child. In the fall of 1897, respondent's health became seriously affected involving her lungs, she having a tendency to pulmonary trouble, which with the labors incident to the duties of a farmer's wife and the care and nursing at the breast of an infant rendered respondent in no condition, physically or mentally to bear the insults, injuries and outrages set forth in the answer; that instead of sympathizing with respondent plaintiff's ill temper increased, charging that her delicacy was pretended, and that respondent's mother had put into her head the notion that she was likely to die soon and resented her mother's solicitude as a personal affront; that in the spring of 1898, respondent undertook to discharge the household duties, nursing and caring for her child, without any hired help, finding that she was unable to do so, and that her health was giving away under the strain she told plaintiff at breakfast, on May 13, 1898, that she would be obliged to have aid; he refused and flew into a violent passion; said he would not have a dozen in his family; that he would pay for no help, later in the day, about 11 o'clock he returned to the house and began upbraiding respondent who only begged him to cease; he violently asserted that he would not be run over by any woman, declaring respondent was a liar and a double-faced woman, and ordered her to leave and go to her parent's home. Fearing for her life respondent said and did nothing, till on the next morning when he had left the house, she then, acting

on his orders left for her parent's home, where she has since resided; she left a note explaining that she had gone because of his cruel treatment and because she had been told to go; that from that day to this plaintiff had offered no explanation of his conduct or withdrawn his order to go, or requested the respondent to return, but on the contrary his subsequent conduct had been even more cruel and insulting and inhuman; that the episode on the 13th day of May, 1898, was only the culmination of a series of acts of cruel and inhuman conduct. Not many months before this time, on one occasion when respondent, owing to the state of her health and worn out by nursing, begged him to excuse her from sexual intercourse and the plaintiff in a violent rage left the bed, went to the desk where he kept his razors declaring that he would put an end to matters and would kill himself, putting respondent in fear of serious bodily hurt and again under similar circumstances he acted in the same way; at another time he falsely accused respondent of having been satisfied by sexual intercourse with other men; that the excessive sexual intercourse demanded by the plaintiff and yielded to by respondent at a time when she was nursing one child at the breast and was pregnant was largely responsible for her weak and broken health, and was cruel and inhuman treatment within the meaning of the law, and any acts of respondent tending to restrain it were resented with violence; and alleges the taking of the child, Ray, from her possession by the plaintiff by stealth when respondent was seven months advanced in pregnancy and the shock to her system nearly produced a miscarriage and placed her life in serious jeopardy, which fact was at once brought to the attention of plaintiff by Dr. Rau, the attending physician, with a request to return the child as the only remedy he could prescribe, and was necessary to her recovery, in a letter to W. H. Marston, which plaintiff admitted in his answer in the *habeas corpus* proceedings filed as part of exhibit number one was received by him on the 31st day of July, a copy of which letter was filed with the answer; that notwithstanding these facts such was the violence of his disposition and the inhumanity of his conduct that he ignored the request, made no attempt to inquire into the truth of Dr. Rau's report and refused to consider and comply with the request, preferring the gratification of his wishes or malice to

the life of respondent or even that of his own child; that yet while the life of respondent and plaintiff's unborn child was still in danger plaintiff filed an answer to the *habeas corpus* petition in which he not only resisted the relief by cruelly and falsely charging that respondent's condition was due to her own conduct, and that she had resorted to means to prevent the rearing of a family which were immoral in their character, which respondent was advised was not only evidence of the cruel and inhuman disposition of plaintiff but was such cruel and inhuman treatment as would entitle her to a decree for divorce; that although the circuit court in the *habeas corpus* proceeding gave permission to plaintiff to visit the child, Ray, at any hour between 6 A. M. and 9 P. M. and though courteously treated whenever he did so he only visited the said Ray four or five times after the separation and his last visit was in December 1898; that he never had asked to see the second child, Agnes, which to respondent was conclusive evidence that his affection for his children was much less strong than his malignant desire to inflict torture on her by taking them away from her; that as to her right to the custody of her children and her ability to provide a suitable home for them respondent adopted the allegations of her petition in the *habeas corpus* proceedings and alleged that no change in her condition or the circumstances which then justified the court in awarding her the custody of said Ray had occurred to call for a new order on the subject; that plaintiff by his conduct had allowed his children to forget his existence, to become wholly weaned in their affections and recollections from him, so that his children, as well as respondent, would cruelly suffer in their affections by transfer to one whose conduct showed he had lost all affection for them, and prayed for a perpetual divorce *a mensa et thoro* from plaintiff, that the custody and possession of her children might not be disturbed, but if need be, confirmed, and for reasonable alimony.

A large number of depositions were taken and filed by both parties, and the cause was heard on the 20th day of August, 1902, on the papers and proceedings theretofore read and had and on the answer and cross bill of defendant, and general replication thereto, and on the depositions, when the court found that defendant was not entitled to the relief

sought in her answer and cross bill, and that the plaintiff was entitled to an absolute divorce from the defendant by reason of her desertion and abandonment on the 14th of May, 1898, which had continued without interruption from that time to the present and decreed accordingly; and further that the defendant was not entitled to any further allowance for permanent alimony or counsel fees and decreed the custody and possession of the child, Ray, to the plaintiff until the further order of the court, and the custody and possession of the child, Agnes, was awarded to the defendant until the further order of the court, and provided for the visiting by the parents to the children respectively at any hour between 9 A. M. and 6 P. M. as often as once a week and leave was reserved to either party to apply to the court at any time for modification or further orders regulating the time and conditions upon which the children might be visited by them respectively in case disagreement or unpleasantness should arise by reason of the privilege given, and provided that the decree should not become absolute until the first Tuesday in January, 1903, and that the defendant was allowed until said date to return with her children to the bed and board of the husband, Charles S. Dawson, and should she so elect to return she should be received and treated by plaintiff as his wife, and unless she should so voluntarily return within said time that the decree of divorce should be and become final, and on the 6th day of January, 1903, the cause was further heard and no reconciliation having taken place it was decreed that the said decree of August 20, 1902, was declared final, and plaintiff was decreed to pay all costs.

From which decrees the defendant appealed, and says that the court erred in not finding that the allegations of the defendant's answer, in the nature of a cross bill were sustained by the evidence, and should have granted the relief there prayed for, and should not have found that the allegations of plaintiff's bill, as to desertion and abandonment without sufficient cause, charged against the defendant were sustained by the evidence, and should not have entered the decree in his favor for absolute divorce, and should not, on a consideration of the evidence, documentary and oral, in the record have awarded the custody of the infant child, Ray, to the plaintiff, and that the custody of Ray having been tried and de-

termined by the circuit court of Morgan county in an action or proceeding at law any application for change or modification of the judgment or order then made could only have been lawfully made to the court in that proceeding and a court of equity had not the power to review or change that judgment in a collateral suit, and that an order having been made on a full hearing as to the custody of said Ray in an action at law a court of equity in a subsequent suit, even if it had the power in a collateral matter, would not revise or change the order in the law proceeding, except when the welfare of the child itself requires it in consequence of some new and substantial change of conditions subsequently taking place.

The plaintiff filed no answer or special replication to the answer of the defendant in the nature of a cross bill but only entered a general replication to the answer. While, as contended by the appellant's counsel that the allegations of the cross bill are to be taken as admitted to be true by the appellee, under the statute the appellee must prove her allegations as far as the same are made for the purposes of a divorce, as the case for divorce has to be made by evidence and independent of the admissions of the defendant. The evidence in the case as to the cruelty and inhuman treatment by the appellee of appellant is very conflicting, while the evidence of the appellant supports the allegations of her bill, the defendant squarely denies the facts and there is but little if any oral evidence aside from her own, of the treatment of which she complains. It is true the cruelty and brutal treatment complained of by her is mostly of such a character as other parties could have no knowledge of it. The most damaging evidence against the appellee, on the question of cruel and inhuman treatment, is the fact of his receipt of the letter addressed by Dr. Rau, who was called to treat the appellant after she was overcome by the shock occasioned by the act of the appellee in stealthily taking possession of the child, Ray, when appellant was about seven months advanced in pregnancy, which letter called appellant's attention to the fact that both the life of his wife and that of his unborn child were placed in jeopardy by his said act, and that the return of the child was the only remedy the doctor knew of to relieve them from such danger. To this he paid no heed.

Many witnesses who have been about the house of the parties when they were living together testified to the uniform kind treatment of the appellee toward the appellant, and that he provided well for his wife and child. It is true several of these witnesses were his own people, while others were disinterested neighbors, in good standing. Appellant testifies that he invited appellee back to live with him while she testified to the contrary, and claims that he ordered her to leave his home and go to her father's. It is not disputed that she had been absent from appellee's home more than three years when the suit was brought.

After a careful reading of all the evidence in the case I am not inclined to disturb the decree of the circuit court in so far as the divorce of the parties is concerned; as to the care and custody of the children the evidence is conclusive that the circumstances of either of the parties are such as to render them capable of the proper care and support of either or both of the children, the parents of both the appellant and the appellee show themselves willing and able to care for and support the children. The mother, the appellant, evidently feels and manifests a greater solicitude for the welfare of the children than the appellee, who says in his testimony, which appears to have been taken in November, 1901, that he had been to see his son, under the privilege granted him by the order of the court in the *habeas corpus* proceeding, quite three years before, four times in all, although the permission was that he could visit him any day he desired to see him, between 9 A. M. and 8 P. M., and it is further shown that he never inquired for, nor asked to see the younger child. It is true he claims that he was not cordially received or well treated on such visits, but this is contradicted by all the members of the household who were examined as witnesses, besides some outside parties who happened there at the time of some of his visits.

It is contended by counsel for appellant that the judgment of the court in the *habeas corpus* proceeding of three years before was *res judicata* and could only be reviewed in that same proceeding by writ of error or application for another writ, if the circumstances had so changed as to authorize it. There can be no question as to the jurisdiction of a court of law in *habeas corpus* proceeding to try and adjudge all ques-

tions arising as to the custody, possession and control of infant children.   See *Mathews* v. *Wade*, 2 W. Va. 464, wherein it is held, (syl. pt. 2): "The jurisdiction exists in courts to determine upon the hearing of a writ of *habeas corpus* who has the legal right to the custody of a minor." *Rust* v. *Vanvacter*, 9 W. Va. 600; *Green* v. *Campbell*, 35 W. Va. 698; *Barnes* v. *Cunningham*, 37 W. Va. 746; Church on Hab. Cor., section 425; *Armstrong* v. *Stone*, 9 Grat. 102.   It is only when some new condition subsequent to the judgment intervenes that the matter in controversy can again be submitted to the court, and the testimony is limited to the new facts arising since the first adjudication.   *Mercein* v. *People*, 25 Wend. 64; Freeman on Judgments, section 324; *Brooks* v. *Logan*, 112 Ind. 183; 2 Am. St. 177.   If it were otherwise a party could prosecute his *habeas corpus* to final determination, then if defeated, at once bring his suit for divorce and relitigate the same questions in his suit for divorce.   In the proceedings between the parties to case at bar a full, fair trial was had, exceptions taken by the respondent in the proceeding and leave given him to prepare bills of exception looking to an appeal or writ of error, but he failed to sue out the writ of error. . Appellee's bill fails to allege any change of conditions whatever since the judgment in the *habeas corpus* case, and so fails to place himself in position to ask relief inconsistent with the said judgment. In section 387, Church on Hab. Cor. with reference to judgments in a *habeas corpus* case being *res judicata*, the rule is laid down:   "The principle of *res judicata* is applicable to proceedings on *habeas corpus* inquiring into and determining the rights of conflicting claimants to the custody of minor children.   The court is not, in such a case, bound to deliver a child whose custody is in controversy into the custody of any claimant, but may leave it in such custody as the welfare of the child at the time appears to require; and its order as to the custody of the child is not an 'unalterable, final judgment,' but will last until the child may have the right to nominate its own guardian, or until a material change of circumstances requires a change of custody.   Until some new fact has occurred which has altered the state of the case or the relative claims of the parents or other contestants to the custody of the child in some material respect, the decision of a

court of competent jurisdiction on a former writ is, however, conclusive upon a subsequent application. 'The principles of public policy requiring the application of the doctrine of estoppel to judicial proceedings, in order to secure the repose of society,' says Mr. Freeman, the Tribonian of the modern law, 'are as imperatively demanded in the cases of private individuals contesting private rights under the form of proceedings on *habeas corpus,* as if the litigation were conducted in any other form. Otherwise, as well stated in the opinion of Senator Paige, 'such unhappy controversies as these may endure until the entire impoverishment or the death of the parties renders further continuance impracticable. If a final adjudication upon a *habeas corpus* is not to be deemed *res adjudicata,* the consequences will be lamentable. This favored writ will become an engine of oppression, instead of a writ of liberty.' " In the case of *State v. Bechdel,* 37 Minn. 360, (5 Am. St. 854), a writ of *habeas corpus* was sued out by the mother to recover the custody of her infant child which was decided against her. Afterwards another writ was sued out by her, in which her husband joined with her, as relator. The court held that the judgment in the first case was a bar to the second, as no new facts were shown to have occurred subsequently, and the husband's rights were solely dependent on those of the wife; the court says: "In our judgment, in such cases both principle and considerations of public policy require the application of the doctrine of estoppel to judicial proceedings. We therefore hold that a former adjudication on the question of the right to the custody of an infant child, brought up on *habeas corpus,* may be pleaded as *res adjudicata,* and is conclusive upon the same parties. *Mercien v. People* 25 Wend. 64; *People v. Brody,* 56 N. Y. 182; Freeman on Judg., section 324; Church on Habeas Corpus, section 387. In this case the former adjudication pleaded in the return to the writ is admitted in the answer; and no new facts are alleged as having since occurred which alter in any material respect the rights of either party to the custody of the child." See also, to same effect, *in re Sneden,* 105 Mich. 61, 55 Am. St. 435; *Wilson v. Elliott,* 96 Tex. 472, 97 Am. St. 978; 9 Am. & Eng. Dec. in Eq. 75; 73 S. W. R. 946; *Weir v. Marley,* (Mo.) 6 L. R. A. 672. In *DuBois v. Johnson,* 96 Ind. 6, the court after quoting from *Williams*

v. *Williams*, 13 Ind. 523, says: "The substance of this is
that courts may modify the decree awarding the custody of
children in divorce cases, but such modification must be upon
matters which have arisen subsequent to the decree. This
commends itself to our judgment as the reasonable rule." In
*Carrien* v. *Carrien*, 50 W. Va. 113, syl. pt. 2, it is held: "A
decree fixing the custody of a child upon decree in a di-
vorce suit is final on the conditions then existing, and should
not be changed afterwards unless on altered conditions since
the decree or on material facts then existing, but then un-
known, and for the welfare of the child." And at page 118,
it is said in the opinion: "Considerations just stated would
justify us in saying that the mother is entitled to the custody
of Walter Carriens; but they are by no means all that is to
be considered, for there stands the first decree adjudging to
the mother his custody, which must remain strong between
the mother and father. If the question were for the first
time before us we might give his custody to the father; I
hardly think we ought; but that question has been litigated,
and the second decree is only a reversal of the first without
adequate cause. Wherever a power is given by statute to
order a decree as a custody or alimony, the former decree
has such force that it will not be reviewed on facts existing
at its date, but will be altered only on changed circumstances,
or as to custody of childron on material facts unknown at
the date of the decree showing that the welfare of the chil-
dren demands a change. No such circumstances have been
shown in this case, and we see no reason for reversing the
first decree as to this matter. *Buckminster* v. *Buckminster*,
88 Am. Dec. 657, and note; 2 Am. & Eng. Ency. L. (2d
Ed.) 137. Section 11 allows the change only for the benefit
of the children." It will be seen that the same rule applies
in case of decrees entered in divorce cases under section 11,
chapter 64, Code, and the decree will be altered only on facts
occurring subsequent to the entering of the decree, not on
those existing at the date of the decree, unless then un-
known, and even under said section the change would only
be made for the benefit of the child, and not out of regard
for any legal rights of the father. A petition for a new writ
of *habeas corpus* or a petition to revise a decree entered in a
divorce suit should show the new facts which are relied upon

by the petitioner to entitle him to a different decision, such facts occurring since the judgment or decree or the unknown facts at the time of the entering of the judgment or decree must be set forth in the petition and must be sufficient in law to call for a new and different order as to the custody of the child, otherwise the petitioner would not be entitled to relief. In case at bar the bill of the appellee sets out no new facts to entitle him to relief against the order awarding the custody of the child, Ray, to the appellant. There is nothing in the bill, whatever, which tends to show that the welfare of the child, Ray, demands a change of custody. The same rule applies in divorce as in other cases, that the plaintiff can have no relief unless the allegations of his bill entitle him to it. In *Handlan* v. *Handlan*, 37 W. Va. 486, (syl. pt. 4,) it is held: "In suits for divorce, as well as in suits in equity, in general all orders and decrees must be justified by the pleadings, as well as by the proofs." *Wass* v. *Wass*, 41 W. Va. 126.

Appellee assigns as cross error the action of the court in decreeing the custody of his infant daughter, Agnes, to the appellant. In his bill he relies solely upon his legal rights at common law. After simply referring in his bill to the *habeas corpus* proceedings in merely an incidental manner and alleging that he is clearly entitled to the care and custody of his child, Ray, and that there was no valid or just reason or cause why he should not be restored to his custody, prays "That said children, Ray Dawson and Agnes Dawson, be given into the care and custody of their said father, the said plaintiff." In support of this cross assignment of error it is argued by counsel for appellee that at the date of the decree awarding the child, Agnes, to her mother, she was four years of age and there was not a particle of evidence in the record to show that she was in need of her mother's care; that her father had the legal right to her custody and control, and that his right thereto was not to be defeated by sentimental considerations and subjected to any compromise with his wife, and cite *Carr* v. *Carr*, 22 Grat. 168, and *Latham* v. *Latham*, 30 *Id.* 329. Appellee gives no other reason that the said child or either of the children should be placed in his custody except the cold legal fact that he was their father and entitled under the common law to such custody, and as said by

counsel for appellee, in their brief the mother "Had no right to the possession of the child." The evidence shows that appellee had never manifested any interest, whatever, in the child, Agnes, and very little if any, in his son, Ray; in making his visits to Ray, under the judgment of the court in the *habeas corpus* proceedings, he never inquired after the younger child, and there is no evidence that he ever saw her more than once, and then it does not appear that he paid any particular attention to it. He admits himself that he never made more than four visits to his son after the court gave him permission to visit him, the last of which visits was in December, 1898, nearly three years before the institution of this suit. From his conduct it would appear that he felt very little interest in the children, or either of them, and cared but little for their welfare: he could not feel the same interest in these children that his wife feels, who from the evidence and the intelligent deposition given by herself, is proven to be a woman of, at least, fair education and more than ordinary culture, and who has all these years bestowed upon them the watchful and loving care of a fond and devoted mother. Even in the thirty years which have transpired since the decision in the *Carr* v. *Carr* case, cited by counsel for appellee, the rule touching the custody of children has been greatly modified in harmony with our advanced civilization. In March, 1902, in the case of *Meyer* v. *Meyer*, 100 Va. 228, it is held: "Ordinarily the father is entitled to the care and custody of his infant child, but, when the father is claiming the custody of the child, the court will exercise its discretion according to the facts and what appears to be the best interest of the child. The welfare of the child is the controlling consideration." The opinion in that case refers to the case of *Stringfellow* v. *Summerville*, 95 Va. 701, with approval, and also to the case of *Carriens* v. *Carriens*, *supra*, from which it quotes with approval. In 9 Am. & Eng. Enc. of Law, (2d Ed.) 867, it is said: "In selecting a custodian the courts are free in the exercise of sound discretion to promote the welfare of the children and are not bound to recognize the paramount right which the father had at common law to the custody of his children. The welfare of the children and the protection of their interests are the matters of primary consideration with the courts," and authorities there cited.

In case of *Carriens* v. *Carriens*, cited, the opinion, written by JUDGE BRANNON, in referring to the common law rule says: "The law as to the custody of children has been greatly modified. Formerly the right of the father to its custody was almost an inflexible rule. That rule forgot that a mother had a heart. The real owner of the child, be it even a baby, must give it up. But civilization, advanced thought and human kindness have bent this iron rule and opened the ears of courts to the pleading of the true friend and owner of the child. The courts do not, these days, inexorably take from mothers their children of tender years, even for the father, if the mother is a fit person, and has a home for them, but look at all the circumstances. The welfare of the child is the test." According to the best modern authorities the welfare and highest interest of the child are of primary importance and must be consulted in deciding as to its custody and control. *Bonnett* v. *Bonnett*, 61 Ia. 199: 47 Am. Rep. 810. And in note to *Brooks* v. *Logan*, *supra*, it is said: "Where the father and mother have separated and their infant children must of necessity be deprived of the care, protection and training of one of them, then it is the duty of the courts to confide the custody of the infants to that parent, whether father or mother, best suited to maintain, protect and educate them and bring them up in moral courses." Citing *McKim* v. *McKim*, 12 R. I. 462: 34 Am. Rep. 694; *Goodrich* v. *Goodrich*, 44 Ala. 670; and all this is strictly consistent with our statute as found in section 11, chapter 64, Code, and authorized thereby.

The court did not err in giving the custody of the younger child to the appellant.

For the reasons herein stated the decree of the circuit court of Morgan county is reversed, only in so far as it gives to the appellee care and custody of the child, Ray Dawson, and in all other respects the decree is affirmed.

*Reversed in part.   Affirmed in part.*