# CHARLESTON.

## CARIENS *v.* CARIENS

Submitted June 6, 1901.   Decided November 16, 1901.

1. DIVORCE—*Decree—Alimony.*
    A decree of divorce *a mensa et thoro* allowing alimony to the wife is *res judicata* as to the alimony; but the husband may be discharged therefrom by the subsequent adultery of the wife. (p. 115).

2. DIVORCE—*Custody of Children.*
    A decree fixing the custody of a child upon decree in a divorce suit is final on the conditions then existing, and should not be changed afterwards unless on altered conditions since the decree, or on material facts then existing, but then unknown, and for the welfare of the child. (p. 118).

Appeal from Circuit Court, Wood County.

Bill by Emma M. Cariens against William S. Cariens. Decree for plaintiff. Subsequently defendant petitioned for relief from the terms of such decree, which was granted, and plaintiff appeals.

*Modified.*

McCLUER & McCLUER, for appellant.

JOHN F. LAIRD, for appellee.

BRANNON, PRESIDENT:

Emma M. Cariens filed her bill in the circuit court of Wood County against her husband, William S. Cariens, asking a divorce from bed and board, and to be given the separate custody of her two children, and alimony for the support of herself and the children. She charged in her bill that for a time she and her husband lived happy together, but that after a while he became dissatisfied, and informed her that he intended to leave her, giving as his reason that she would not do her own housework, but required him to hire it done, and that she was bearing him children too rapidly, she then having a female child a little over a year old named Ruby, and then being within a few weeks of the delivery of another child, which was afterwards born, a boy, and named Walter; that she besought him not to leave her, but

that he resisted her entreaties, and declared his unalterable determination to leave her, and later he had a lawyer to prepare a writing which he presented to her with the demand that she sign it, threatening that if she did not, he would take from her the child already born and the one of which she was then pregnant when it should be born, and all the furniture in the house that he had furnished; that being sick and nervous under this state of things, she yielded and unwillingly signed this writing under compulsion. The writing is an agreement of separation. By it he released all claim to the custody of the child, Ruby Cariens, then about one year old, and put upon her alone the burden of its support "at her own separate and individual expense," and it released him from all obligations to support the child as well as the wife. The bill details his abandonment of her and the children unbroken through years, stating that he had never returned to her home to see the children, and never asked to see them, and had through years shown no affection for them. It states and files two letters which she afterwards wrote him. These letters are important as speaking the *animus* of the wife. One reads as follows: "To my husband: I know you will be surprised to hear from me again, but oh, Will, I want you to come home; I can't bear to live as we are living. Think of your two little children; we both promised at the altar when Rubie was baptized that each of us would do all in our power to raise her up in the way she should go. The children need you; let us live together and do the best we know how, trying in all things to do what is right, and God will help us if we trust in Him. I married you because I loved you more than any one else, and in spite of all changes I have never changed yet. Even if you do not come home for my sake alone, come for the sake of your little son and daughter; for they are your children as well as mine, but I hope it will be for my sake also. Will, if I thought you wouldn't come I would rather not live than live as we are." The other letter states that since the article of separation, she, as he was already aware, had had another child, "our little boy Walter born to us. I am not able to maintain the children without your assistance. There was no reason for you to leave me, and hence I write to ask you to return and assist me in raising our children. I will do the best I can to help. It is too much for me to do, and I do not think you, either, ought to ask or allow it." He did not return as requested. He filed an answer controverting the

representations of the bill; but he took no evidence to disprove its allegations or show her fault in any respect. He did not go upon the witness stand, but she pledged her oath as a witness to the truth of her version of the trouble between them. He did not swear to his answer even. Having proved her bill, a decree was pronounced for a divorce *a mensa et thoro*, cancelling the article of separation, requiring him to pay ten dollars monthly for the support of his wife and children until the younger child should reach the age of fifteen years, or Mrs. Carien should marry. Afterwards the husband filed a petition in the case charging that his wife was about to leave the State and take the children with her, asking an injunction against her taking the children from the State. She defended this petition and the injunction was refused. Still later he filed another petition again charging that she was about to leave the State with the children, and asking an injunction. This petition also charged her with adultery with one Walker since the said decree, and prayed that he, Carien, be given an absolute divorce and the custody of the two children and be released from the alimony charged upon him by said decree. Mrs. Cariens filed an answer to this petition denying that she was leaving the State except for a visit to relatives in Illinois, denying the adultery, and praying on her side for an absolute divorce because of continued abandonment, and for custody of the children. A decree was pronounced dissolving the marriage, giving the custody of the boy child to the husband, and of the girl to the wife, and discharging the husband from any further payment of alimony to Mrs. Cariens. From this decree she appealed.

We do not think the evidence convicts Mrs. Cariens of the grave charge of adultery, and therefore the husband was not entitled to a decree of dissolution of the marriage; but she was entitled to such a decree because of continued abandonment. This, however, is immaterial as the decree of divorce is general, and we may say it was granted to her as well as to him, and is proper. As to that provision of the decree releasing the husband from further payment of alimony. Our statute, Code 1899, chapter 64, section 11, gives the court in a divorce case continued power after decree to make further decree as to the custody and maintenance of the children; but it does not do so as to the alimony fixed in the decree, and we must look elsewhere for authority to do this. Divorce jurisdiction is the creature of the statute, and

the court can only do what it allows, with incident powers. The first decree is conclusive upon the parties and finally fixes the right to alimony granted by it upon all the facts existing at its date, and is therefore *res judicata*. 2 Bishop, Mar. Div. & Sep., s. 877; *Fischli* v. *Fischli*, 12 Am. Dec. 251. But the ground on which Cariens rested his prayer for release from that alimony is on facts transpiring subsequent to the decree, the adultery of his wife. When a decree of absolute divorce gives alimony, the subsequent sexual intercourse by the late wife with other men is no ground for discharging the man from such alimony, because after such decree the woman is no longer wife, no longer owes any duty of purity to the husband, and breaks no duty to him by her misconduct however gross. 2 Am. & Eng. Ency. L. (2 Ed.) 139; *Cole* v. *Cole*, 142 Ill. 19, 34 Am. St. R. 56; Note in 60 Am. Dec. 672; *Forest* v. *Forest*, 3 Bosw. 661; *Sammis* v. *Medbury*, 14 R. I. 214; *Sampson* v. *Sampson*, 3 L. R. A. 349; *Mitchell* v. *Mitchell*, 20 Kan. 665; *Cross* v. *Cross*, 63 N. H. 444. But these authorities, as also reason, would make a difference between absolute divorces and decrees of separation. The parties between whom there is judicial separation by a divorce from bed and board are yet man and wife, and may be reconciled, and can reunite without decree or violation of law. Hence adultery by the wife after the decree will furnish ground on which a court can release the husband from the support of the wife, because it is itself a ground of divorce. 1 Bishop, Mar. Divorce & Sep. s. 1230. As stated above, the evidence does not convict Mrs. Cariens of adultery. It is, however, beyond question, admitted by Mrs. Cariens, that she received attentions from Walker, made a one-day's excursion from Parkersburg to Cincinnati in company with two of her friends, a man and wife, and Walker, made several short visits with Walker in a buggy to Walker's relations in the country near Parkersburg, but not extending over night, but returning on one occasion to Parkersburg as late as twelve o'clock at night, and received his attentions frequently at her house, and on several occasions allowed him to kiss her when leaving her. Is this misconduct sufficient to absolve him from alimony? It falls short of ground of divorce. Under the circumstances we do not find it a sufficient cause to release him from the payment of this alimony. The bill, decree and evidence settle it that in the start the husband was in the wrong. This is *res judicata*. The record and adjudication show that he would

not live with his wife, but abandoned her deliberately and without cause, because the decree alone negatives any cause, and besides he gave no evidence to show a particle of justification. The record shows that he wanted to get rid of her, assigning as a cause that she was bearing children too fast, when for this he was equally with her, perhaps more than she, responsible. He placed her in the amphibious position of being neither a single woman nor a married woman. She waited long for his return—implored him to return. She could not all her life be isolated and cut off from the society of men. After years of abandonment by her husband, he having in the most signal manner shown his determination never to live with her again, she had just reason to think that reconciliation was hopeless, and to make an engagement with Walker conditional upon her getting an absolute divorce for continued abandonment, and this engagement of marriage she did make, and this gives reasonable explanation of her conduct with Walker. Many women would do this for self-preservation and security for future support for herself and her children. She seems to have thought, and not without some show of reason, that the clause in the decree limiting alimony to her marrying again, recognized her right to marry again. This engagement with Walker she broke off upon reflection, fearing that if consummated it would give her and him trouble, and cause Cariens to deprive her of her children, which it is apparent from the record was a constant source of solicitude with her. The relations between her and Walker then ceased. They both deny under oath any guilt. We cannot see our way to allow this action of the woman, under these circumstances of the first fault resting on the man, and of paliation and excuse on the side of the woman, to have the effect of undoing the decree for alimony, leaving the woman with two young children to support, as well as herself, without the small help which the decree gave her, when he is a competent locomotive engineer with capacity to earn good wages. The whole outline of the case tells us that it would not comport with equity to do this. The alimony is a meagre help to the wife and will end in a few years. Her action may not be, in the eyes of many, beyond criticism; but there is a great deal of explanation and extenuation speaking in her behalf. The common law, by mere force of the marriage, put upon the husband the debt of support, and he must

show a plain case to be exonerated from it. Suspicion, mere suspicion, will not do. 2 Bishop, Mar. Div. & Sep, s. 1692.

We think too that Mrs. Cariens is entitled to the custody of both children. Why? There is no showing that she is not a proper person to have their custody. She has a home derived from her father, while he is a railroad engineer boarding at Parkeisburg, and can be very little with the boy, who must depend on his father's mother in Mason County for woman care. This would separate the two little children. The evidence shows that the mother of these two children has deep love for them, whereas, as to the father just the reverse is shown, because, though of tender years, he never visited or cared for them through months and years. She swears that he declared that he had had a great deal of trouble with the little girl, and never wanted to see the coming child when it should be born. He did not vouchsafe his oath to deny this ice-cold declaration. The mother will need the help of this boy when he shall become older; the father does not. The boy is but seven years of age. The law as to the custody of children has been greatly modified. Formerly, the right of the father to its custody was almost an inflexible rule. That rule forgot that a mother had a heart. The real owner of the child, be it even a baby, must give it up. But civilization, advanced thought and human kindness have bent this iron rule and opened the ears of the courts to the pleading of the true friend and owner of the child. The courts do not these days inexorably take from mothers their children of tender years even for the father, if the mother is a fit person, and has a home for them, but look at all the circumstances. The welfare of the child is the test. The welfare of a tender child is with the mother generally. 9 Am. & Eng. Ency. L. (2 Ed.) 867; *Cunningham* v. *Barnes,* 37 W. Va. 746; *Green* v. *Campbell,* 35 *Id.* 698. The law leans in this matter to the innocent parent, the one without fault. 2 Bishop, Mar. Div. & Sep., ss. 1190, 1191, 1196. Considerations just stated would justify us in saying that the mother is entitled to the custody of Walter Cariens; but they are by no means all that is to be considered; for there stands the first decree adjudging to the mother his custody, which must remain strong between the mother and father. If the question were for the first time before us we might give his custody to the father; I hardly think we ought; but that question has been litigated, and the second decree is only a reversal of the first

without adequate cause. Where ever a power is given by statute to order a decree as a custody or alimony, the former decree has such force that it will not be reviewed on facts existing at its date, but will be altered only on changed circumstances, or as to custody of children on material facts unknown at the date of the decree showing that the welfare of the children demands a change. No such circumstances have been shown in this case, and we see no reason for reversing the first decree as to this matter. *Buckminster* v. *Buckminster,* 88 Am. Dec. 657 and note; 2 Am. & Eng. Ency. L. (2 Ed.) 137. Section 11 allows the change only for the benefit of the children.

So far as the decree of the circuit court of date March 8, 1900, dissolves the marriage between William S. Cariens and Emma M. Cariens and gives to her the custody of Ruby Cariens, it is affirmed; but in all other respects it is reversed, with costs to the appellant in this Court and in the circuit court.

*Modified.*