## CHARLESTON

### HENRIE v. HENRIE.

Submitted February 21, 1911.  Decided October 22, 1912. ·

1.  DIVORCE—*Alimony—Modification of Decree.*
    In decreeing a divorce *a mensa et thoro*, and for the payment of alimony, the chancellor has the power to reserve the right to make such changes in the amount, as the changed circumstances of the parties, and the principles of justice may require.  (p. 132).

2.  SAME—*Alimony—Review—Discretion of Trial Court.*
    The right to fix the amount of alimony rests in the sound discretion of the chancellor, and this court will not disturb his judgment unless he has grossly abused such discretion.  (p. 135).

3.  SAME—*Alimony—Determination of Amount.*
    In determining the amount of alimony, the property and income of the husband, his ability to earn money, and the needs and social standing of the wife, should be considered.  (p. 133).

4.  SAME—*Alimony—Decree—Effect.*
    A decree dismissing the wife's petition praying for an increase of alimony, without stating the reason why it was dismissed, is not an adjudication upon the right reserved in a former decree to make changes in the amount.  (p. 136).

5.  SAME—*Decree for Alimony—Appeal—Modification.*
    It is error in decreeing a divorce *a mensa et thoro,* to decree payment of alimony "for and during the wife's life"; it should be during their joint lives, or until reconciliation. But, if such is the only error appearing, this Court will correct the decree, and will affirm it as thus modified.  (p. 136).

Appeal from Circuit Court, Wood County.

Suit in equity by Virginia W. Henrie against Morgan Henrie. From a decree increasing the alimony allowed by the original decree of divorce, defendant appeals.

*Modified and Affirmed.*

*McCluer & McClure,* for appellant.

*C. D. Merrick,* for appellee.

WILLIAMS, JUDGE:

On the 5th of December, 1887, at her suit Elizabeth Henrie was granted a divorce from bed and board, from her husband, Morgan Henrie, and $100.00 a year alimony, payable in semi-annual instalments. The decree expressly reserved to the court the right to modify the decree, at any future time, in accordance with equity and justice, on the application of either party, and upon proper showing.

At January rules, 1909, plaintiff filed her petition alleging that, on account of her advance in years and her consequent inability to earn money by the use of her needle, as she once did, the allowance of $100.00 a year was insufficient for her maintenance. The petition further alleges that, since the decree for alimony was made, her husband, Morgan Henrie, had become more prosperous, possessed more property and had a greater income than he had when the decree of separation was granted, and that he was, therefore, able to pay more toward her support than $100.00 a year. The cause was heard upon petition, demurrer and answer thereto, and depositions, and a decree made increasing the alimony from $100.00 to $400.00 per annum "for and during her natural life," and making it payable in monthly instalments of $33 1/3 each on the 15th of each month, beginning on the 15th of March, 1910. From that decree the husband has appealed.

Relying upon *Cariens* v. *Cariens,* 50 W. Va. 113, which holds that the amount of alimony allowed by a decree of divorce, *a mensa et thoro,* is *res judicata,* counsel for defendant insist that the court was powerless to increase the alimony, and that, therefore, the overruling of the demurrer to the petition was error. But that case does not control the decision in this case,

for the reason, if for no other, that there was no right reserved by the decree in that case, as there is in this, to make changes in the amount of alimony. By such reservation in its decree, the court retained control over its decree; the case was, therefore, still a pending case, for the purpose of permitting such change in the amount as future conditions and the changed circumstances of the parties might show to be necessary to meet the ends of justice and equity.

The statutes of many states expressly reserve such right, both in cases of absolute divorce, and in cases of divorce from bed and board; and, when the right is reserved by statute, the court need not reserve such right in its decree. Our statute, sec. 11, ch. 64, Code (1906) does not expressly authorize the court to retain such control over its decree. But the majority of the Court are of the opinion that such power is implied in the language of sec. 11, empowering the court to "make such further decree as it shall deem expedient, concerning the estate and maintenance of the parties, or either of them," etc. I do not think the statute should be given that interpretation, because it contemplates the making of such decree for maintenance at the time the divorce is granted. But independent of statute, there is no doubt that the court has inherent power to reserve such control over its decree. The law has been so determined by the courts of many states, independent of statutes. *Purcell* v. *Purcell*, 4 H. & M. 517; *Lockridge* v. *Lockridge*, 3 Dana (Ky.) 28, 28 Am. Dec. 52; *Lockridge* v. *Lockridge*, 2 B. Mon. (Ky.) 258; *Beck* v. *Beck*, 43 N. J. Eq. 668; *Galusha* v. *Galusha*, 138 N. Y. 227. In his very excellent work on Divorce and Separation, Mr. Nelson, in Vol. 2, sec. 933a, says: "It is clear that such a decree of divorce may reserve the allowance for future consideration, and in such case the decree is not an adjudication of a matter which by its very terms is left open for determination."

Mr. Bishop also says: "There is no just ground to doubt the efficacy of such a reservation, and in prudence it ought to be in states wherein the right in the absence of the reservation is unsettled or is denied." 2 Bishop on Mar. & Div., sec. 875.

The courts of some states hold that the right to make such changes in the amount of alimony, as the altered conditions of

the parties may show to be equitable and necessary, is an inherent power in the court, and that no reservation in the former decree is necessary to authorize it. 2 Nelson Div. & Sep., secs. 933a and 934; *Olney* v. *Watts,* 43 Ohio St. 499; *Lockridge* v. *Lockridge,* 2 B. Mon. (Ky.) 258; and *Wheeler* v. *Wheeler,* 18 Ill. 39. But we are not called upon to decide whether or not that is the law of this state, and we do not decide that question. But we suggest that it is a safe and proper practice to reserve the power by the decree. In cases of separation from bed and board, much stronger reasons exist for permitting changes in the amount of alimony, than exist in cases of divorce *a vinculo.* In the former class of cases, the marital relation continues, and the duty rests upon the husband, if he is the party in fault, to support his wife in proportion to his ability, and in accordance with her needs and social standing; and both are still bound to keep the conjugal vows. *Cariens* v. *Cariens, supra;* 1 Nelson Div. & Sep., sec. 134; 2 Bishop Mar. & Div., sec. 1672. But, to justify an increase in the amount of alimony, there must be a corresponding increase in the husband's financial ability, since the original decree; or such an alteration in the wife's situation, as will render her need of help more imperative. The amount could not be changed, if the conditions, existing at the date of the decree, remained the same.

The petition avers that it is tendered pursuant to the right reserved by the decree; and also avers facts which, if true, show that her husband is in better financial circumstances, and that she is in greater need of assistance, than when the separation was decreed and the alimony determined. The allegations show sufficient cause for relief, and the demurrer to the petition was properly overruled.

It appears that within the last six or eight years petroleum oil was discovered in, and is now being produced from, defendant's land, and that he has received considerable income in the way of royalties, the income for the year next previous to the giving of his deposition being $404.27; that he has accumulated some money, and owns $3,000 of bank stock, from $2,000 of which he derives an income of about $120 a year; that he has money loaned out, but how much does not appear; that he raises cattle on his farm for sale; that his son, James Henrie

and his family lived with him on his farm, and that they all derived their·support mainly from the products of the farm; that the consideration for their support was the services of his son's wife in keeping house for him, and in looking after his comfort; that he pays $80 annually in taxes; and that he has the same amount of land now that he had in 1887, which is about 260 acres.  These facts show that defendant's financial ability has materially increased since the decree of separation, and that he is now in a fairly prosperous condition.  Surely, a man who pays an annual tax of $80 on lands which produce oil, from which more than $400 a year royalty is derived, in addition to farm products, and who owns $3,000 of bank stock, and has money to lend, ought to be able to contribute more than $100 per year to the support of his wife.  True, the parties have both grown old; the husband is now past eighty, and the wife is only about ten years younger.  It is also true that a man of that age could scarcely be expected to make even his own support, solely by his own labor.  But, on the other hand, it is equally unreasonable to suppose that a woman of seventy, afflicted with rheumatism, could support herself on $100 a year, aided only by such income as she can make with her needle.  Old age and inability to labor will not relieve the husband from the duty to contribute to the support of his wife according to her need, if he has an income with which to do it; he must share it with her.  Here the husband has, besides a living for himself and son and his son's family, derived from the farm, an income of more than $500 annually, from royalty oil and· dividends on bank stock, while the wife owns nothing, and receives but $100 a year from her husband.  Can she shelter, clothe and feed herself on this?  She says she used to earn something by sewing, but her hands are now so drawn and crippled with rheumatism that she is not able to pursue that occupation.  In view of his advanced age, it is scarcely probable that the husband will be burdened with ·the unwilling support of his wife much longer.  But, while he lives and has an income, the law imposes. the duty upon him of sharing his means with his wife.  It is now nearly twenty-five years since they were separated, and there is apparently, not much hope for reconciliation.  Still, as· long as they continue to live, the law keeps open the door of

·opportunity, and will welcome a return to them of the joy which, no doubt, filled their youthful hearts when, in the years long gone, they entered into the most sacred relationship in life.

While it is the duty of the chancellor to consider the character and amount of the husband's income, as well as the wife's need and her social standing, in arriving at what will be a just and reasonable allowance for alimony, *Reynolds* v. *Reynolds,* 68 W. Va. 15, 69 S. E. 381; *Bailey* v. *Bailey,* 21 Grat. 43, still the amount which he is authorized to fix is a matter which rests in his sound discretion; and, unless such discretion is grossly abused, this court will not reverse the decree. *Gross* v. *Gross,* 54 W. Va. 364; *Bailey* v. *Bailey, supra; Miller* v. *Miller,* 92 Va. 196.

In her petition plaintiff asks that the amount be increased to $600 a year, and that it be made to cover the last fifteen years. But in her deposition she says that $400 a year will be enough, and the court decreed her that amount. It is urged that $400 is too much, because plaintiff, in her cross-examination, was more specific as to the cost of her living, and stated that her room rent cost $60 a year; that she thought her board would cost her $12 a month, although she kept no account of it, and that her clothing and incidentals would amount to at least $60 a year. That makes, in all, $264; and counsel for defendant insist that the allowance should not have exceeded that amount. But plaintiff's estimate makes no allowance for sickness, nursing and medical attention. It is an extremely conservative estimate of plaintiff's needs, especially in view of her age and inability to help support herself, and makes no allowance for contingencies. We do not think the chancellor abused his judicial discretion by increasing the amount of plaintiff's estimate by $136.

Plaintiff made an application to the court in 1889, for an increase of alimony, and a decree was then made dismissing her petition, without reserving the right to make further application. It is insisted that that decree is final, and is *res judicata* upon the right reserved in the first decree. We do not think so; it does not appear what that petition contained; it may have been

that it failed to allege such facts as would justify an alteration in the decree, and was dismissed for that reason.

Defendant also alleged in his answer that plaintiff, on one or two other occasions, filed petitions, praying for an increase in her allowance; but it does not appear that the court took any action in reference to them. The presentation of such petitions, without any action upon them by the court, could have no affect on plaintiff's rights.

The decree appealed from is erroneous, however, in that it provides for the payment of alimony during plaintiff's life. It should have been during their joint lives or until reconciliation. *Martin* v. *Martin*, 33 W. Va. 695; *Lockridge* v. *Lockridge*, 3 Dana (Ky.) 28. The divorce from bed and board did not affect the wife's *inchoate* right in her husband's estate; and, on the death of either, payment of alimony should cease. It is for the wife's support, but if the husband should first die, the wife is then entitled to dower and to her distributive share of his personal property, which takes the place of alimony. 2 Nelson on Div. & Sep., sec. 1022; *Taylor* v. *Taylor*, 93 N. C. 418; *Castlebury* v. *Maynard*, 95 N. C. 281; *Hokamp* v. *Hagaman*, 36 Md. 511; *Jarnagan* v. *Jarnagan*, 80 Tenn. 293.

We will enter a decree here amending the decree below by substituting for the words, "For and during her natural life," the words, "for and during their joint lives, or until reconciliation," and will further amend it by adding the following clause, viz.: "The right is hereby reserved to make such changes in the amount of alimony, on the petition of either party, as the altered circumstances of the husband, and the future needs of the wife, may render necessary to meet the ends of justice." And, as thus modified, the decree will be affirmed, but without allowance of costs to appellant.

*Modified and Affirmed.*

ROBINSON, JUDGE:

We must look to the statute for power in divorce cases. If the court could properly make such reservation in the first decree as it did, the statute must warrant that practice. At the least, the powers given by statute must incidentally warrant it. The statute does warrant such reservation for change in the amount of alimony, since the court, on decreeing either kind of divorce,

may make such further order concerning the estate and main-tenance of the parties as it shall deem expedient. Code 1906, ch. 64, sec. 11. If the court deems it expedient to fix an amount of alimony subject to change in the future, that may be done. But if no reservation is made in the decree, authorizing the future change, the amount is settled and the decree in that particular is *res adjudicata*. *Cariens* v. *Cariens*, 50 W. Va. 113. Though the statute permits a reservation for future change, still, if none is made, the statute precludes a change.

The circuit court made no reservation for change in the last decree. It would seem that the court deemed it expedient to make this last decree final as to the amount of alimony. The court was not obliged to make a reservation every time it passed on the question of alimony. Because it made a reservation in the former decree, is no reason why it should put a similar reservation in its next decree in that particular. It had the right on proper hearing to decree alimony so as to make the amount final. That was a matter within the sound discretion of the circuit court, and certainly it does not appear that the discretion was abused. Therefore, the decree in that particular should not be disturbed here. So far as the decision of this Court modifies the decree by putting in a reservation opening up a settled amount of alimony, it does not meet with my approval. This appellate court ought not to assume powers belonging to the circuit court, simply because the judges here would have made a different order if presiding below. There should be just and substantial reasons for leaving open a question of alimony, and thereby extending litigation in divorce cases. Certainly if the circuit court does not leave the question open, this Court should not do so. It ought to be the policy of the law, and we think it is, speedily and rightly to end such matters—not to encourage divorce litigation to the discouragement of reconciliation, or at least peace, between separated husband and wife.

As to the amount which the court finally fixed, we could reverse the decision, if it were plainly against the evidence. But, since we say it is not, we ought to leave the decree as the court below lawfully made it. The gist of the majority decision on this point is, that the circuit court could not make the alimony

allowance final. We say that it lawfully could—that it lawfully did.