FLORENCE E. BUCK *v.* DELTA D. BUCK

(CC 606)

Submitted April 18, 1939. Decided May 10, 1939.

*Walter F. Ball* and *P. J. Shiben,* for plaintiff.
*I. M. Underwood* and *W. J. Brennan,* for defendant.

HATCHER, JUDGE:

Pending a divorce suit of Florence Buck against Delta Buck, the parties entered into this agreement: "The said parties * * * desiring to settle their property rights, do hereby agree that the said Delta D. Buck shall pay to said Florence E. Buck the sum of $1080.00, in payments of $30.00 each month, beginning on December 1, 1937 and a like sum on the 1st day of each month thereafter until the sum of $1080.00 shall be fully paid. The said Florence E. Buck is to have nothing further in and to the estate and property of the said Delta D. Buck of which he is now possessed or that may be hereafter acquired by

him." Following the agreement a decree of divorce was awarded Mrs. Buck, which contained this recital and adjudication: "and counsel for the parties, plaintiff and defendant, having represented to the Court that the matter of alimony has been settled out of Court and an agreement in writing to that effect having been exhibited to the Court, it is therefore adjudged, ordered and decreed that the said Delta D. Buck do pay unto the said Florence E. Buck, as alimony for a period of thirty-six months, for the support and maintenance of the said Florence E. Buck, the total sum of $1080.00, payable in monthly installments of $30.00 each on the first day of each and every month hereafter, in each year during the period of thirty-six months, the payment of the said installments to commence on the 1st day of December, 1937, and to continue during the period above described."

At the succeeding term of the circuit court Mrs. Buck filed a petition setting up what had previously occurred in the divorce suit; alleging that the agreement between herself and Mr. Buck was not intended as a settlement of alimony but purely as an adjustment of a money loan from her to him, and if the agreement should be properly construed as an alimony settlement, then it was procured by misrepresentation and fraud; and praying that the divorce decree be corrected and alimony awarded. The circuit court sustained a demurrer to the petition, and upon joint motion of the parties, certified here its sufficiency.

It is contended in support of the demurrer that the petition does not present the "altered circumstances or needs of the parties" prescribed by Code, 48-2-15 as the basis for "a new decree" in a divorce suit after a decree concerning maintenance; and also that the matters contained in the petition may be presented only in an original bill of complaint attacking the divorce decree upon the grounds of fraud.

We see no need of defining the petition closely. The final decree in the divorce proceeding recites that the agreement between the parties was exhibited to and construed by the circuit court as an alimony settlement. By

its terms, the agreement purports to be a property settlement only. Hence, the construction of the circuit court, so far as it depended on the instrument itself was *a mistake in point of law.* "Error in law. lies where upon the facts apparent of record, the judgment is improper." *Campbell* v. *Patterson,* 7 Vt. 86, 89. Accord: *O'Brien* v. *Connor,* 2 Ball and B. 152; *McDougald* v. *Doughtery,* 39 Ala. 409, 423. The ordinance of Lord Chancellor Bacon, providing that a timely bill of review should lie for apparent legal error in the body of a final decree, "has never been departed from" by the courts of equity in the United States. *Dexter* v. *Arnold,* (Fed. Cas. No. 3856) 5 Mason 303, 310. This Court has repeatedly recognized that practice. *Nichols* v. *Nichols,* 8 W. Va. 174, 182, *et seq.; Dingess* v. *Marcum,* 41 W. Va. 757; *Weldon* v. *Callison,* 119 W. Va. 306. The fact that counsel for Mrs. Buck induced, in part, the erroneous decree, does not preclude a bill of review. "The plaintiff may have a bill of review, to review a decree made for himself, if it be less beneficial to him than in truth it ought to have been." *Vandebende* v. *Levingston,* 3 Swanson 624. Accord: Justice Story in *Dexter* v. *Arnold, supra.* In chancery pleadings, substance rather than label is regarded. If a complaint styled a "petition" contains allegations requisite in *a bill of review,* the complaint will be regarded as such bill. *Sturm* v. *Fleming,* 22 W. Va. 404. Consequently, we are of opinion that this petition may be appraised and upheld as a bill of review.

The ruling is reversed and the cause remanded.

*Reversed and remanded.*

KENNA, JUDGE, concurring:

The decree of the trial chancellor under consideration is, according to its terms, a decree for the payment of alimony. It refers to a written contract between the plaintiff and the defendant as being the basis for the decree, which, when examined, is found to be a settlement of property rights between the parties. No decree was entered affecting their property rights.

It is well to bear in mind the fact that chancery jurisdiction of divorce proceedings rests upon statutory authorization. The parties may bind themselves by contract in so far as their property rights are concerned. According to the weight of authority, this rule does not apply to the payment of alimony, except in cases where the contract is approved by the court. *Pryor* v. *Pryor,* 88 Ark. 302, 114 S. W. 700, 129 Am. St. Rep. 102; *Julier* v. *Julier,* 62 Ohio St. 90, 56 N. E. 661, 78 Am. St. Rep. 697; *Henderson* v. *Henderson,* 37 Ore. 141, 60 P. 597, 61 P. 136, 48 L. R. A. 766, 82 Am. St. Rep. 741. See also, *Biggs* v. *Biggs,* 117 W. Va. 471, 185 S. E. 857; *Jennings* v. *First National Bank,* 116 W. Va. 409, 180 S. E. 772, 100 A. L. R. 494. This for the reason that an agreement supposedly entered into for the purpose of settling the question of alimony necessarily is made subject to the statutory law which vests in the trial chancellor the power to alter alimony payments. Such statutory provisions are to be read into the contract. *Pryor* v. *Pryor,* 88 Ark. 302, 129 Am. St. Rep. 102, 114 S. W. 700. See also, the annotations in 58 A. L. R. 639 and 109 A. L. R. 1068. In the absence of such a statute, the court, in the light of changed circumstances, may alter an alimony decree or, if that decree expressly indicated that the court, in awarding alimony, reserved judgment upon any of the matters submitted, may later pass upon the reserved questions and alter the alimony. 2 Bishop, Marriage, Divorce and Separation (1891 Ed.), 355, sec. 877.

Had the decree under consideration been one settling property rights, it would have become final in the same manner as does the usual chancery decree.

Regarding this as an alimony decree and not as a decree based upon property rights, although there are cases holding to the contrary, the plain weight of authority, in my judgment, holds that the trial chancellor may modify it even in the event that the modification results in a departure from a clear-cut alimony contract between the parties. There is no alimony contract here. I repeat that the decree in question, in terms, is a decree for the pay-

ment of alimony; not for payment in lieu of alimony nor for the settlement of property rights, as was the case in *Moore* v. *Crutchfield,* 136 Va. 20, 116 S. E. 482.

The only remaining question is the construction of Code, 48-2-15, dealing with the right of our chancery courts to control the payment of future, as distinguished from accrued, alimony. That section contains the following language: " * * * and the court may, from time to time afterwards, on the petition of either of the parties, revise or alter such decree concerning the maintenance of the parties, or either of them, and make a new decree concerning the same, as the altered circumstances or needs of the parties may render necessary to meet the ends of justice; * * *."

Was it the legislative purpose simply to re-state the then existing power of our chancery courts in divorce proceedings or to broaden them "to meet the ends of justice"?

As I read the quoted language, the phrase "altered circumstances" is unambiguous and refers to circumstances since the last decree was entered. However, the language goes on and vests in the trial court the right to revise or alter the decree whenever the "needs of the parties may render that course necessary to meet the ends of justice." I do not believe that the adjective "altered" extends beyond the word "circumstances". Certainly the disjunctive "or", unless the contrary clearly appears, must be taken as differentiating the terms that it separates. Viewed in this light, I am convinced that in order to meet the ends of justice, conditions affecting the needs of either of the parties which existed at the time the former decree was entered may be assigned as the basic reason justifying the revision or alteration of that decree.

The case of *Cariens* v. *Cariens,* 50 W. Va. 113, 40 S. E. 335, 55 L. R. A. 930, in the opinion, as well as in the syllabus, speaks of alimony in a decree from bed and board as being *res adjudicata* as to the alimony, but in the syllabi, as well as in the opinion, the language makes it quite clear that this is confined to facts in existence at

the time the decree was entered, and that it is not applicable to facts subsequently arising. However, at the time the *Cariens* opinion was handed down, the rule in West Virginia was that the trial chancellor should, upon entering a decree for alimony, expressly reserve his judgment upon questions then submitted and could later alter the alimony without passing upon those questions. This was an inherent power held by the chancery courts independent of statute. *Henrie* v. *Henrie,* 71 W. Va. 131, 133, 76 S. E. 837,. 838. This holding was approved and amplified in the case of *Sperry* v. *Sperry,* 80 W. Va. 142, 157, 92 S. E. 574, 579, wherein it was held that if in a divorce decree the court did not reserve the power to subsequently change the amount of alimony, the omission constituted error which could be corrected on appeal. The Sperry case was decided in 1917.

At that time, the applicable statutory provision (1923 Code, chapter 63, section 11) read as follows: " * * * and the court may, from time to time afterward, on petition of either of the parties, revise or alter such decree concerning the care, custody and maintenance of the children, and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require, * * *."

Summing up the law of West Virginia as it was prior to the enactment of the present statute, it would seem that a decree for alimony was *res adjudicata* as to every matter of fact preceding its date, but not as to subsequent matters of fact. That holding was based upon a decree which did not reserve the right to modify or alter the amount of alimony. Notwithstanding that doctrine, the court had the power to expressly reserve the right to alter or modify a decree for alimony, and if it was not reserved, the failure to do so constituted error which could be corrected on appeal. In other words, the trial chancellor had the power to alter the amount of alimony if circumstances arising subsequent to his decree seemed to require that to be done, and it was his duty to reserve the power to do so upon any additional showing of facts antedating the decree as well.

It seems to me that when our Legislature of 1935 amended and re-enacted the provisions of our statute relating to divorce and alimony, it was their purpose to cut the Gordian knot of this inconsistency and to rest a decree for alimony on substantially the same basis as an interlocutory decree in a chancery proceeding, considering not only an alteration in the circumstances of the party which might have arisen since the last decree, but also the needs of the parties, whether arising from subsequent facts or from mistakes made or errors committed when the preceding decree was entered, in order to meet the ends of justice.

For the foregoing reasons, I believe that it was error to sustain the demurrer to the appellant's petition, and, without pre-judging the equities involved, I would reverse the trial chancellor's order and remand this cause with direction to hear and pass upon the allegations of the petition, first according to the appellee the right to answer.