STATE *ex rel.* DELORES JEAN HARMON

*v.*

GEORGE UTTERBACK, *et al.*

(No. 11032)

Submitted April 21, 1959.     Decided May 12, 1959.

*Harold A. Bangert, Jr.,* for relator.

*John L. Detch, Andrew Detch,* for respondents.

HAYMOND, Judge:

This is an original proceeding in habeas corpus instituted in this Court in November, 1958. It was continued from time to time by agreement of the parties, and on April 21, 1959 was submitted for decision upon the petition of the relator, the answer of the defendants, the depositions in behalf of the parties, and the written briefs and the oral argument of counsel.

The relator, Delores Jean Harmon, an unmarried woman under the age of twenty one years, the mother of a male child born July 10, 1958, seeks a writ to obtain the permanent custody of her child from the defendants, George Utterback and Louise Utterback, his wife, who are its present custodians. When her child was born the age of the relator was eighteen years and five months.

At the age of fourteen years the relator was committed as a delinquent child by the Juvenile Court of Kanawha County to the West Virginia Industrial Home for Girls near Salem until she became twenty one years

of age. After remaining at that institution for a period of approximately two years she was paroled and, under the control and supervision of the Department of Public Assistance, she was placed in the home of Mr. and Mrs. Bayard L. Cutlip near Hurricane, in Putnam County. While living in the Cutlip home she attended high school and in November, 1957, she became pregnant. About six o'clock in the morning of Thursday, July 10, 1958, while confined in a Huntington hospital, she gave birth to the male child whose custody is involved in this proceeding. Neither the identity nor the whereabouts of the father of the child is disclosed by the evidence.

Before her admission to the hospital she had discussed the matter of the disposition of the child with Mrs. Ruby Ellen Bailey, a registered nurse and the wife of Dr. Ray W. Bailey, who examined and advised the relator during her pregnancy. Having learned of the birth of the child by a telephone call about eight o'clock on the morning of July 10, 1958, Mrs. Bailey, accompanied by Mrs. Cutlip, visited the relator at the hospital about eleven o'clock that morning. Before her arrival at the hospital Mrs. Bailey had obtained from a lawyer a form of a written relinquishment and consent to the adoption of the child to be signed by the relator. After remaining for sometime with the relator Mrs. Bailey and Mrs. Cutlip left the hospital in search of a notary public but they returned to the hospital about two o'clock in the afternoon and at that time the relator signed and acknowledged the paper in triplicate before a notary public whose services had been obtained by them.

When the child was born it was removed from the presence of the relator without being seen by her. According to the doctor who delivered the child, this was done at the request of the relator who has never seen the child at any time. After the paper was signed the child was released from the hospital in the custody of Mrs. Bailey who had previously arranged to place it with the defendants who reside in Greenbrier County. The defendants and the relator are total strangers to each

other and neither had seen the other until after the institution of this proceeding. Though Mrs. Bailey had learned from a pastor of a church in Oak Hill that the defendants with whom he was well acquainted desired to adopt a child, she did not see or become personally acquainted with the defendants until the day immediately following the birth of the child when they came to the home of Mrs. Bailey and obtained possession of the child from her.

On Sunday following the birth of the child the relator was discharged from the hospital and on Monday, July 14, 1958, according to her testimony, she wrote Mrs. Bailey a letter in which she told her that she wanted her baby, that she "could not go through with it.", and that, though she had told her she would not change her mind, she had changed her mind, and asked that the "people who has the baby" be notified immediately of her desire to have her child. Later, by letter dated and mailed August 14, 1958, she wrote Mrs. Bailey that she wanted the custody of the child. In October, 1958, she instituted a proceeding in habeas corpus against Mrs. Bailey and Mrs. Cutlip in the Circuit Court of Putnam County to obtain the custody of her child but when it appeared that neither of the defendants in that proceeding had the possession of the child it was dismissed without prejudice, and in November 1958 this proceeding was instituted in this Court.

The written instrument signed and acknowledged by the relator at the hospital on the afternoon of July 10, 1958, states that she irrevocably gave, transferred, delivered and relinquished to the defendants all right to the custody and control of the child and that she agreed and consented to its adoption by the defendants.

Since the birth of her child and her release from the hospital in July, 1958, the relator has continued to remain in the custody and under the care and supervision of the Department of Public Assistance and the department provides for her support and maintenance and

furnishes her food, clothing, shelter and medical attention. After attending a high school in Huntington for a few weeks in the fall of 1958 the relator left the school and she is now living in a home maintained by the Department of Public Assistance on West Third Street in Huntington. She is unemployed, has no income, has received no training for any particular kind of employment and is not fitted for any type of work except maid or household service.

The defendants are persons of good moral character and are gainfully employed. The husband, a school teacher, is forty eight years of age, has taught school for twenty one years, and his wife, who is forty five years of age, is also a school teacher and has taught school for twenty seven years. They were married in July 1947 but have no children. They attend church regularly, have a joint income of approximately $800.00 per month, and own a modern dwelling located on a tract of nine and one-half acres of land in Alderson, Greenbrier County. Their home contains three bedrooms, living room, kitchen, bath, and basement, is suitably furnished and equipped, and is located near a school and the church which the defendants attend. They have become attached to the child and desire to adopt and rear it as their own. They have given it their name and they plan to provide a public school and college education for it. The defendants have no physical disabilities and are possessed of good health.

Most of the foregoing facts are not disputed but there is a conflict in the evidence as to the intention of the relator in signing the paper and consenting to the removal of the child from the hospital on July 10, 1958, and her understanding of the effect of those transactions.

The relator, the only witness in her behalf, testified that she did not read or understand the effect of the paper which she signed; that she had not fully recovered from the anesthetic administered to her in connection with the birth of her child; that she intended to relinquish

only the temporary custody of the child; that she was told and thought that she could revoke any transfer of its custody within 120 days from the time it was taken from her; and that she did not tell anyone that she did not want to commit the child to the care and custody of the Department of Public Assistance. Her testimony concerning these matters is weakened by statements made by her on cross-examination in which she admitted that she had been told if she gave the child to the Department of Public Assistance the child would be moved from place to place and that she had said that she did not want this to happen; that she had discussed the disposition of her child with Mrs. Cutlip and Mrs. Bailey before it was born and had told them that she would let them know when the child was born; that she arranged for a telephone call by which Mrs. Bailey was informed of the birth of the child on the morning of July 10, 1958; that the relator expected Mrs. Cutlip and Mrs. Bailey to visit her at the hospital when the child was born; that she knew the purpose of their visit and that they would have a paper for her to sign and acknowledge in connection with the disposition of her child; that the child would be taken by them to other persons who were strangers to the relator; that she thought it was for the best interest of the child to permit it to be taken by Mrs. Cutlip and Mrs. Bailey; and that she had never seen her child. The statement in her letter that she had said that she would not change her mind but had done so indicates that she intended to relinquish the permanent custody of the child when it was removed from the hospital on July 10, 1958.

The testimony of the notary public, before whom the relator acknowledged her signature to the paper on July 10, 1958, and of Mrs. Cutlip and Mrs. Bailey, all of whom were present at the time the paper was signed, is that the relator knew the purpose of their visit to the hospital and the meaning and effect of the paper which she signed; that she voluntarily signed the paper and permitted the child to be taken by Mrs. Cutlip and Mrs.

Bailey; and that the relator at the time intended to relinquish her right to the permanent custody of the child and to consent to its adoption by the persons who had arranged with Mrs. Bailey to obtain possession of the child. Mrs. Cutlip and Mrs. Bailey testified that they had discussed with the relator the disposition of the child when it should be born; that she desired them to place the child permanently in a suitable home; and that she voluntarily consented that the child be permanently delivered to the defendants whose names were inserted in the paper which the relator voluntarily signed and acknowledged on July 10, 1958.

The relator contends that she did not intend to relinquish her right to the permanent custody of her child; that the paper signed and acknowledged by her on July 10, 1958, is not a valid and binding contract; that as she was at the time an infant under the age of twenty one years she had the right to repudiate its provisions concerning the relinquishment of her right to the permanent custody of the child and her consent to its adoption by the defendants; that she did so effectively by her letters of July 14 and August 14, 1958, to Mrs. Bailey who delivered the possession of her child to the defendants; and that as the mother of the child she is entitled to its permanent custody. On the contrary the defendants insist that the relator voluntarily relinquished her right to the permanent custody of the child; that though she is its mother she has no right to the permanent custody of the child; and that to permit her to have the custody of the child would adversely affect its welfare and best interests.

The evidence in this proceeding fully sustains the contention of the defendants.

The writ of habeas corpus may be invoked to settle disputes which involve the custody of infant children. When used for that purpose the writ is of an equitable nature and the proceeding resembles an equitable proceeding in rem in which the res is the child. *State ex rel. Lipscomb* v. *Joplin*, 131 W. Va. 302, 47 S. E. 2d 221;

*Pukas* v. *Pukas,* 129 W. Va. 765, 42 S. E. 2d 11, *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 Am. St. Rep. 843. In a habeas corpus proceeding involving the right to the custody of an infant the vital and controlling question is the welfare of the child and its determination rests in the sound discretion of the court. *State ex rel. Lipscomb* v. *Joplin,* 131 W. Va. 302, 47 S. E. 2d 221.

By statute the father or the mother of any minor child is entitled to the custody of its person and, while living together, the parents have equal rights to share jointly the custody of their child. Section 7, Article 10, Chapter 44, Code, 1931. The law, however, does not recognize any absolute right in any person or claimant to the custody of a child. *State ex rel. Lipscomb* v. *Joplin,* 131 W. Va. 302, 47 S. E. 2d 221; *Pukas* v. *Pukas,* 129 W. Va. 765, 42 S. E. 2d 11. A court is not required, in any case, to award the custody of a child to any claimant or any other person but may leave or place it in such custody as its welfare at the time may dictate or require. *State ex rel. Lipscomb* v. *Joplin,* 131 W. Va. 302, 47 S. E. 2d 221; *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 Am. St. Rep. 843. The right of a parent to the custody of his or her child is based on natural law and arises because the child is his or hers to care for and rear, *Hoy* v. *Dooley,* 144 W. Va. 64, 105 S. E. 2d 877; *State ex rel. Lipscomb* v. *Joplin,* 131 W. Va. 302, 47 S. E. 2d 221; *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 Am. St. Rep. 843; and such right, as already indicated, is expressly recognized and declared to exist by the statute to which reference has been made.

There is a conflict of authority concerning the validity of an agreement by which a parent surrenders or transfers the legal right to the custody and control of his or her child to another person. 67 C.J.S., Parent and Child, Section 11d(1). In this jurisdiction, however, a parent may, by fair agreement or otherwise, transfer or relinquish the custody of his or her infant child to another person and by such action make the custody of the child by such other person valid and legal. *Bell* v. *Eicholtz,*

132 W. Va. 747, 53 S. E. 2d 627; *State ex rel. Lipscomb* v. *Joplin,* 131 W. Va. 302, 47 S. E. 2d 221; *State ex rel. Cooke* v. *Williams,* 107 W. Va. 450, 148 S. E. 488; *Fletcher* v. *Hickman,* 50 W. Va. 244, 40 S. E. 371, 55 L.R.A. 896, 88 Am. St. Rep. 862; *Cunningham* v. *Barnes,* 37 W. Va. 746, 17 S. E. 308, 38 Am. St. Rep. 57; *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 Am. St. Rep. 843.

The relator as the mother of her infant child had the right to its custody. This right, however, she voluntarily relinquished within a few hours after the birth of her child. The evidence establishes beyond question that she voluntarily relinquished and transferred the custody of her child to the defendants and without even looking at her child permitted it to be taken from the hospital during the afternoon of the day of its birth by Mrs. Cutlip and Mrs. Bailey for the express purpose of delivering it into the permanent possession of the defendants. The validity of the written instrument which the relator voluntarily signed and acknowledged, as a binding contract between the relator and the defendants, need not be determined for even if it did not constitute a valid or irrevocable agreement between the parties, it is a declaration of the intention of the relator which indicates her action and shows that she intended to transfer and relinquish, and did voluntarily transfer and relinquish, the permanent custody of her child to the defendants.

The relator has no statutory right to revoke or cancel her relinquishment to the defendants of the custody of her child. The provisions of Section 1, Article 3, Chapter 19, Acts of the Legislature, 1945, Regular Session, Section 4904 (28) Michie's West Virginia Code, 1955, Annotated, that a relinquishment of a child by a parent who is under twenty one years of age shall not be valid until approved by a judge of the appropriate juvenile court and that an unwed mother may repudiate such relinquishment within 120 days from its date by giving the prescribed notice, which were in effect on July 10, 1958, relate to a relinquishment of a child by a parent to a

licensed child welfare agency and have no application to the relinquishment to the defendants by the relator of the custody of her child. The provision which permitted an unwed mother to repudiate her relinquishment has been repealed by Section 1, Article 3, Chapter 16, Acts of the Legislature, 1959, Regular Session.

The right of a parent to the custody of his or her child, being founded in nature and wisdom and recognized and declared by statute, will be respected unless such right is transferred, relinquished or abandoned and though a parent is ordinarily entitled to such custody, a court is not required in any case to deliver the child into the custody of any claimant but may permit it to remain in such custody as its welfare at the time appears to require. *State ex rel. Lipscomb* v. *Joplin*, 131 W. Va. 302, 47 S. E. 2d 221; *State ex rel. Bennett* v. *Anderson*, 129 W. Va. 671, 41 S. E. 2d 241; *Straughan* v. *Straughan*, 115 W. Va. 639, 177 S. E. 771; *Connor* v. *Harris*, 100 W. Va. 313, 130 S. E. 281; *Cunningham* v. *Barnes*, 37 W. Va. 746, 17 S. E. 308, 38 Am. St. Rep. 57; *Green* v. *Campbell*, 35 W. Va. 698, 14 S. E. 212, 29 Am. St. Rep. 843. In *Cunningham* v. *Barnes*, 37 W. Va. 746, 17 S. E. 308, 37 Am. St. Rep. 57, this Court held in point 1 of the syllabus that "While it is true that the law regards the father as the natural guardian of his child and as such ordinarily entitled to its custody yet he may under certain circumstances relinquish his right to such custody, and be precluded from reclaiming its possession."

This Court has repeatedly held that in a contest involving the custody of an infant the welfare of the child is of paramount and controlling importance and is the polar star by which the discretion of the court will be guided. *Stout* v. *Massie*, 140 W. Va. 731, 88 S. E. 2d 51; *Smith* v. *Smith*, 138 W. Va. 388, 76 S. E. 2d 253; *Pugh* v. *Pugh*, 133 W. Va. 501, 56 S. E. 2d 901, 15 A.L.R. 2d 424; *State ex rel. Lipscomb* v. *Joplin*, 131 W. Va. 302, 47 S. E. 2d 221; *Pukas* v. *Pukas*, 129 W. Va. 765, 42 S. E. 2d 11; *Harloe* v. *Harloe*, 129 W. Va. 1, 38 S. E. 2d 362; *Suter* v. *Suter*, 128 W. Va. 511, 37 S. E. 2d 474; *Frame* v. *Wehn*,

120 W. Va. 208, 197 S. E. 524; *Arnold* v. *Arnold,* 112 W. Va. 481, 164 S. E. 850; *Reynolds* v. *Reynolds,* 109 W. Va. 513, 155 S. E. 652; *State ex rel. Cooke* v. *Williams,* 107 W. Va. 450, 148 S. E. 488; *State ex rel. Palmer* v. *Postlethwaite,* 106 W. Va. 383, 145 S. E. 738; *Connor* v. *Harris,* 100 W. Va. 313, 130 S. E. 281; *Boos* v. *Boos,* 93 W. Va. 727, 117 S. E. 616; *Buseman* v. *Buseman,* 83 W. Va. 496, 98 S. E. 574; *Dawson* v. *Dawson,* 57 W. Va. 520, 50 S. E. 613, 110 Am. St. Rep. 800; *Cariens* v. *Cariens,* 50 W. Va. 113, 40 S. E. 335, 55 L.R.A. 930; *Cunningham* v. *Barnes,* 37 W. Va. 746, 17 S. E. 308, 38 Am. St. Rep. 57; *State ex rel. Neider* v. *Reuff,* 29 W. Va. 751, 2 S. E. 801, 6 Am. St. Rep. 676; *Rust* v. *Vanvacter,* 9 W. Va. 600.

When a parent has, by agreement or otherwise, transferred, relinquished or surrendered the custody of his or her child to a third person and subsequently demands the return of the child, the action of the court in determining whether the custody of the child shall remain in such third person or whether the child shall be returned to its parent depends upon which course will promote the welfare and the best interests of the child. *State ex rel. Lipscomb* v. *Joplin,* 131 W. Va. 302, 47 S. E. 2d 221; and the parent will not be permitted to reclaim the custody of the child unless the parent shows that such change of custody will materially promote the moral and physical welfare of the child. *Bell* v. *Eicholtz,* 132 W. Va. 747, 53 S. E. 2d 627; *State ex rel. Lipscomb* v. *Joplin,* 131 W. Va. 302, 47 S. E. 2d 221; *State ex rel. Cooke* v. *Williams,* 107 W. Va. 450, 148 S. E. 488; *Fletcher* v. *Hickman,* 50 W. Va. 244, 40 S. E. 371, 55 L.R.A. 896, 88 Am. St. Rep. 862; *Cunningham* v. *Barnes,* 37 W. Va. 746, 17 S. E. 308, 38 Am. St. Rep. 57; *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 Am. St. Rep. 843; 67 C.J.S., Parent and Child, Sections 12e and 13f(1).

The relator has utterly failed to show that a change of the custody of the child from the defendants to her will promote the welfare and best interests of the child. On the contrary the evidence clearly shows that the welfare

of the child will be materially promoted by permitting its custody to remain with the defendants. The relator is herself committed indefinitely to the care, custody and control of the Department of Public Assistance and is maintained and supported by that agency. She is unemployed, has no income, and is untrained and unfitted to pursue any particular vocation which will enable her suitably to maintain and support herself. If she were permitted to have the custody of her child she would be unable financially to support and maintain it on any suitable or satisfactory basis or according to any acceptable standard of living.

In contrast with the surroundings of the relator as they now exist, the defendants are respected and substantial citizens of the community in which they reside. They occupy and maintain a respectable home in which to rear the child. They are persons of good moral character, live in comfortable circumstances, are gainfully employed and are able to maintain and care for the child in a Christian home and to provide it with a proper education.

In the presently existing circumstances there should be no change of custody and the relator should not be permitted to reclaim the custody of her infant child.

The relief sought by the relator is denied and the writ heretofore awarded in this proceeding is discharged.

*Writ discharged.*