## CIRCUIT COURT OF SHENANDOAH COUNTY

Ronald Bell

 v.

Margarete Bell

Case No. (Law) CL02-14

In re Christopher Steffan Bell

Case No. J-9037 (Juvenile Appeal)

BY JUDGE DENNIS L. HUPP

May 3, 2002

These two cases were joined for hearing on April 24, 2002. The law case is a petition for writ of habeas corpus seeking the return of the minor child, Christopher Steffan Bell, to Ronald Bell, adoptive father of the child (as well as paternal grandfather of the child). The appeal is taken from an order entered in the Shenandoah County Juvenile and Domestic Relations District Court dismissing Margarete Bell's petition for custody of the child. Margarete Bell is the natural mother of Christopher.

Ronald Bell and Margarete Bell both appeared with counsel. Mr. Lawrence P. Vance represents Mr. Bell, and Mrs. Alice M. Zent represents Ms. Bell. Mr. James P. Weissenborn is guardian ad litem for Christopher Bell. Christopher Bell is now nine years of age.

There were limited issues before the Court on April 24th. The first issue is whether habeas corpus is a proper means by which to seek return of the child, and the second relates to Ronald Bell's motion to dismiss the custody petition.

From the memoranda filed by counsel, it is clear that habeas corpus can be used for this purpose. I so hold. See also the discussion in Swisher, *Virginia Family Law*, § 15-3 (1991).

The second issue warrants detailed discussion. Christopher Bell was born to Margarete Bell and Larry Bell on December 4, 1993, in the State of Texas. By decree entered in the District Court of Fort Bend County, Texas, on February 4, 1997, the parental rights of Margarete Bell and Larry Bell were terminated. Subsequently, under decree entered on September 12, 1997, in that same court, Ronald Bell and Christine Bell, paternal grandparents of Christopher, adopted the child. During the time of the court proceedings in Texas, the adoptive parents were residents of the State of Florida. They took the child to Florida to live with them. Some time in 1997, Margarete Bell and Larry Bell moved to Virginia after residing briefly in West Virginia. Soon after their move, Ronald Bell and Christine Bell moved with the child to Virginia as well. The natural parents were allowed contact with the child throughout this time. While the testimony is in conflict, it appears that, in either 1998 or 1999, the child began residing, once again, with the natural parents. The adoptive parents returned to Florida. In September 2001, the natural parents separated. Thereafter, Ronald Bell sought return of the child, and Margarete Bell filed her petition for custody in the Shenandoah County Juvenile and Domestic Relations District Court. Ronald Bell has relocated once again to Virginia, and, as I understand, all parties currently reside in Shenandoah County.

Virginia Code § 20-124.2 requires this Court, in awarding custody, to "give due regard to the primacy of the parent-child relationship" but also allows the Court to award custody to "any other person with a legitimate interest" and under appropriate circumstances. Virginia Code § 20-124.1 specifically defines "person with a legitimate interest" and specifically excludes therefrom a person whose parental rights have been terminated by court order. Hence, Ronald Bell argues that this court cannot award custody to Margarete Bell by reason of the termination of her parental rights in the State of Texas and that he is entitled to custody by reason of his now being the child's father by virtue of the adoption also granted in the State of Texas. He further argues that this court must give full faith and credit to the Texas court decrees under the United States Constitution.

Margarete Bell challenges the validity of the Texas court decrees on three grounds: First, in respect to the termination proceedings, she contends that she was not afforded the due process of the law. Secondly, in respect to the adoption proceeding, she contends that Ronald Bell and Christine Bell committed fraud upon the Texas court. Thirdly, she contends that the Texas court did not have jurisdiction to grant the adoption since Ronald Bell and Christine Bell resided in Florida at the time. She thus argues that, since the

Texas decrees have no validity, she is not barred from having custody of the child under the cited statute and indeed should be given preference because she is the natural mother of the child. Alternatively, she argues that, in spite of the Texas court orders and the cited statutes, the best interests of the child demand that she be awarded custody, since the child has resided with her for at least the past three years (and she contends four years). By reason of this, she has had de facto custody and is therefore a party in interest.

I can quickly dispense with the challenges to the Texas court orders. It is clear to me that the Texas court had jurisdiction over the parties in both proceedings. During both of the proceedings, the natural parents and the child resided in Texas. The adoptive parents submitted themselves to the jurisdiction of the Texas court in seeking the adoption. I would be surprised to find that Texas grants adoptions only to state residents. Margarete Bell alleges that the adoptive parents committed fraud upon the Texas court by promising to protect the child from the natural parents while intending to allow contact between them and the child. If this be fraudulent, it is not of such nature as would undermine or void the adoption. The proceedings for termination of parental rights extended over several years. It appears to me that Texas gave the natural parents ample opportunity to address the problems which gave rise to the termination proceedings and thereby to retain their parental rights. They were represented by counsel and, when counsel withdrew, they were given the opportunity to hire other counsel. The withdrawal of counsel occurred at the end of this multi-year proceeding. I believe the natural parents were afforded due process of law. For these reasons, I find both Texas court orders to be valid and entitled to full faith and credit and comity.

While Margarete Bell's alternative argument concerning de facto custody is an attractive one and one that I might accept in the absence of the specific language of the Virginia statute, the General Assembly has expressly provided that the Court cannot award custody to a person whose parental rights have been terminated in respect to the child in question. Except for this proscription, Margarete Bell, as one who has had actual, physical custody of the child for three to four years, would certainly be a party in interest and entitled to pursue legal custody of the child; but, the proscription applies in this case.

Since no Virginia court can award custody of the child to Margarete Bell for the reasons stated, her petition for custody should be, and is, dismissed.

Mr. Vance will prepare the Order incorporating this letter opinion by reference. This Order will conclude the appeal from the Shenandoah County

J. & D. R. Court, but the habeas corpus proceeding must now be scheduled for trial even though we can now anticipate the outcome. In that regard, I have found that the habeas corpus is an appropriate tool in these circumstances, but I have made no ruling beyond that.

June 18, 2002

After my pre-trial ruling (letter opinion of May 3, 2002), this case was scheduled for trial on the petition for writ of habeas corpus. In the interim, Mrs. Zent filed a motion to reconsider and a motion to dismiss. During a telephone conference with counsel on May 24, 2002, I advised counsel that I would not reconsider particular points upon which I had already ruled. However, I agreed to hear Mrs. Zent's motion to dismiss wherein she raises equitable defenses and the statute of limitations and also her motion to reconsider insofar as it challenges the validity of the Texas proceedings on grounds other than lack of counsel. In this latter regard, the specific issues will be (1) whether the Texas procedure for termination of parental rights is so different from that of Virginia as not to be entitled to the full faith and credit of this Court and (2) the effect, if any, of Margarete Bell's being a German citizen at the time of the Texas proceedings. I advised counsel that I would hear these motions first and, if I ruled against Margarete Bell, we would then proceed to a trial on the habeas corpus petition. If, at the time, Mrs. Zent would be able to convince me that she is entitled to put on evidence as to the best interests of the child in spite of the statutory proscription against her client's being awarded custody, we would then continue the trial to another date. This would avoid the parties' having to have all of their witnesses in court on June 6th, the trial date, when it was not yet clear that they would be needed.

On June 6, 2002, I modified our agenda somewhat. I advised that I would hear the motion to reconsider but that the defenses raised by Mrs. Zent in her motion to dismiss were, in fact, affirmative defenses which should be part of her case in defense to the petition for writ of habeas corpus. I suggested that I could, upon oral motion in limine by Mr. Vance, address the question of whether the equitable defenses would lie in a law action such as habeas corpus. In any event, I intended to rule on the motion to reconsider and, if I ruled against Margarete Bell, proceed to trial on the habeas corpus petition.

At the conclusion of the evidence and arguments on the motion to reconsider, I found it necessary to take the issue under advisement. I am now prepared to rule. Before I go further, I feel that I should candidly

acknowledge that this is one of the most difficult cases I have had in my tenure on the bench. I say this not because of the legal issues involved which, in the final analysis, are relatively simple, but because my sense of what is right in this case runs contrary to the law. I shared these sentiments from the bench on June 6th, and my attitude has not changed. As I acknowledged then, I am fully aware that I have not heard the merits of the case relating to the best interests of the child. I do not know who would be the better parent as between Ronald Bell and Margarete Bell. My view of the case, which I suppose is a superficial view at this point, leads me to believe that the Texas court gave every opportunity to Larry Bell and Margarete Bell, the natural parents of Christopher, to correct whatever was wrong at the time and finally, perhaps in exasperation, terminated their parental rights. This view is supported, in my mind, by the length of time those proceedings were pending in the Texas court and by the withdrawal of counsel for the natural parents at the end of that time but before final termination. Fortunately for the child, the paternal grandparents arrived on the scene to rescue him, becoming his adoptive parents. As time went on, Ronald Bell and Christine Bell must have believed that whatever problem existed in the past had been corrected and that the child could be safely returned to his natural parents. They returned Christopher to them in 1998, and he had resided with his natural parents for over three years at the time those parents separated. Thereafter, with his son no longer living in the home with the child, Ronald Bell, the adoptive father, sought return of the child. On the surface, this would appear to be some sort of retaliation which, in my view, would be inexcusable. During histestimony on June 6th, Ronald Bell suggested that his action was triggered by Margarete Bell's refusal to let him and his wife visit with Christopher. This too, on the surface, would be inexcusable given the role these people have played in the child's life. Again, I acknowledge that this is a superficial analysis, since I have not heard detailed evidence concerning the dynamics among these parties, the relationship the child has with each of these parties, the level of care the child has received, or the level of contact he has maintained with his adoptive parents. The salient point which is difficult to ignore is that the child has resided with his natural mother for the last four years, but the law, as I read it, requires that I do just that. This makes the case extremely difficult.

Having recited, in some detail, in my previous letter opinion, the evidence I heard on April 24, 2002, I see no need to repeat it here. In our last hearing, Margarete Bell presented evidence that the child was returned to the care and custody of Larry and Margarete Bell while they resided in West Virginia. There is a dispute as to statements made by Ronald and Christine

Bell at the time of the return. Margarete Bell contends that statements were made to the effect that custody was being returned to them, but Ronald Bell denies this. It is undisputed, however, that the child remained in the care and custody of the natural parents from that time until their separation and thereafter with the natural mother, Margarete Bell.

In oral arguments made on June 6th, Margarete Bell raised a new issue on her motion for reconsideration. I will address this issue first, and I will then turn to the two issues scheduled for this hearing.

West Virginia Contract. Margarete Bell argues that, under West Virginia law, parents may transfer custody by contract or agreement and that that occurred in this case. She cites *State v. Utterback,* 144 W. Va. 419, 108 S.E.2d 521 (1959). She argues that this Court must give full faith and credit to the law of West Virginia in this regard. (This seems to me to be more of a conflict of laws question.) Ronald Bell counters that the child did not remain in West Virginia for six months and therefore, under the Uniform Child Custody Jurisdiction Act, then in effect, and under the current Uniform Child Custody Jurisdiction and Enforcement Act (Virginia Code §§ 20-146.1 et seq.), West Virginia would not have had jurisdiction over the child and its law should not be controlling in this case. In this regard, it should be noted that Ronald Bell and Christine Bell were residents of Shenandoah County, Virginia, at the time, and that Larry Bell picked up the child in that jurisdiction and transported him to his home in West Virginia.

While I, too, question whether West Virginia law is applicable here under these circumstances, it really makes no difference. The public policy of Virginia, as expressed by the General Assembly, prohibits the award of custody of minor children to the person whose parental rights have previously been terminated. Virginia Code §§ 20-124.1 and 20-124.2. That is the law which is binding on this Court.

Validity of Texas Proceedings. Margarete Bell did not contest further the validity of the Texas proceedings. Indeed, she either now agrees that the proceedings were valid or advances an alternative argument. Specifically, Margarete Bell argues that Texas law would permit the award of custody to a person whose parental rights have been terminated and that, since her parental rights were terminated in Texas, Texas law in that regard should be followed as well. Section 102.006 of the Texas Code Annotated (this statute appearing within that part of the Texas Code entitled "Texas Family Code") provides that "an original suit" may not be filed by "a former parent whose parent-child relationship with the child has been terminated by court order" unless that person "has a continuing right to possession of or access to the

child under an existing court order." *Id.* (emphasis added). Here, Margarete Bell's de facto custody is not supported by court order. It does appear, as was argued by Ms. Zent, that the Texas statute contemplates the possibility of the estranged parent's maintaining or reestablishing a judicially-sanctioned relationship with the child; however, it is unclear to me how this exception would ever be triggered. Ordinarily, one would have to file suit in Order to obtain a court order, but, in this particular instance, one must have the court order in order to file the suit. ("Which comes first, the chicken or the egg?") I am not sure what circumstances were envisioned by the Texas legislature when enacting the statute, but there is no such court order in this case; and, while we give full faith and credit to the Texas court order terminating the parental rights of the natural parents, the cited Virginia statutes are controlling and specifically limit this court's options under the present circumstances.

Margarete Bell's Citizenship. Margarete Bell has testified that she was born in Poland but moved to Germany at an early age. She remains a German citizen. Scant authority was offered on how her citizenship may affect the validity of the Texas proceedings. On the contrary, Ronald Bell cited substantial authority for the proposition that the Vienna Convention on Consular Relations (raised by Margarete Bell in her motion to reconsider) has no effect on the validity on those proceedings. The Virginia Supreme Court, in *Kasi v. Commonwealth*, 256 Va. 407, 508 S.E.2d 57 (1998), rejected the suggestion that the Vienna Convention creates legally enforceable individual rights. Even if the Texas court would rule differently on this question, the issue was not addressed to the Texas court during the pendency of those proceedings and therefore cannot now be raised in this Court. This is analogous to the situation presented in *Murphy v. Netherland*, 116 F.3d 97 (4th Cir. 1997).

Accordingly, I again dismiss Margarete Bell's petition for custody, and, once again, we are left with the habeas corpus proceeding. While I had intended to conduct the habeas trial on June 6th, we did not get that far because of my taking the motion to reconsider under advisement. I also realize that we have the issues raised in Margarete Bell's motion to dismiss, which, as I stated, would most appropriately be raised in defense at the habeas trial. The one exception would be the plea of the statute of limitations, and I can consider Margarete Bell's motion to dismiss in this regard to be a plea in bar.

Perhaps the remaining issues may be addressed on motion(s) for summary judgment. It seems to me that the pleadings filed and evidence heard to date would enable the court to proceed in that fashion.

July 19, 2002

Subsequent to my second letter opinion, Ronald Bell, adoptive father, regained actual custody of the child by self help. He refused to return the child to the natural mother at the end of the agreed visitation. With that, his habeas corpus petition became moot, and he nonsuited. I had already ruled that the separate custody petition filed by the natural mother should be dismissed. I have since entered an order to that effect.